- Mary P. Govan, Executrix, &c., *vs.* John A. Binford.

It is the settled doctrine, that if a creditor, without the consent of the surety, enters into a contract with the principal, upon a sufficient consideration, to give him an extension of time for a definite period, or enters into any contract with the principal, which, in its consequences, may have the effect to give such an extension of time, the surety is released.

The cases of *Wadlington* v. *Gary*, 7 S. & M. 522, and *Newell* v. *Hamer*, 4 How. 692, cited and explained by the court, and declared applicable to this case. *Held*, that the agreement made for the extension of the time of payment, is not such a one as would release the securities.

In error from the circuit court of Carroll county; Hon. F. M. Rogers, judge.

The facts of the case are contained in the opinion of the court.

*Cothran* and *George*, for appellant.

If the promise should be considered to have been made at the same time with the promise to give indulgence, no such contract as the law requires was then made.

Lucas could not have enforced the delivery of the negro, be-

cause that promise was merely accessory to the principal promise which was, to pay the money at a future day, which is clearly insufficient. * Vide 12 Wheat. 511; 3 S. & M. 647.

But regarding it as the principal promise, it is nothing more than to pay the debt in a particular way, or out of a particular fund, which this court has decided to be insufficient. *Gary* v. *Wadlington,* 7 S. & M. 522; *Newell* v. *Hamer,* 4 How. 692.

But Lucas's statement or admission should not have been suffered to go to the jury, because there is no proof that, at the time such declarations were made, he was the owner of the notes, or that they were in his possession. The witness says that Lucas was the owner of the notes.

Ownership is a legal conclusion drawn from facts; it is not a fact which a witness can testify to. Ownership is a mixed question of law and fact, like murder or larceny. It is not a fact, the knowledge of which is acquired by perception. It is a conclusion of the mind made by an act of reasoning, and in this case it is the conclusion the witness came to, from reading a certain writing, which should have been produced in court, or (a sufficient ground being laid for secondary proof) its contents should have been proven, so that the court and jury could have decided whether the writing made Lucas the owner.

But this was not done; the witness, it is true, speaks of its object and its purport to a certain effect. This is certainly not allowable, and should not have been permitted to go to the jury. The court and jury are the legal interpreters of its object and purport, and not the witness.

The court should not have permitted the answer of the witness to be read, for another reason. No sufficient steps had been taken to let in parol proof of its contents. The existence of the paper should not only have been proved, but it must be shown. ·

That the instrument is in possession of, or under the control of the party required to produce it. *Smith* v. *Leap,* 1 Car. & Kir. 48; 1 Phil. on Evid. 440.

In this case the writing was in possession of Lucas, and there is no such privity shown to exist between him and plain-

tiff as would authorize notice to be served on her. A *subpœna duces tecum* should have been served on Lucas, or if without the State, his deposition should have been taken. 1 Greenl. Evid. § 559, and authorities there cited.

The admission of the testimony of Gen. E. L. Acie, to prove the communication made to him by Lucas, is evidently erroneous. It clearly comes within the rule laid down by this court in the case of *Crisler* v. *Garland*, 11 S. & M. 136, and cases there cited.

It can make no difference to say that Binford was present, because he was interested and could not reveal the declarations as a witness in court. It was error to permit witness to state any thing with reference to Davis's character after he had stated that he was unacquainted with his reputation for truth and veracity. Such knowledge is an indispensable pre-requisite to the admission of any statement by the witness, as to reputation or character. 1 Greenl. on Evid. § 461, and notes.

*Watson*, on the same side.

*Sheppard*, for appellee.

New trial will not be granted, unless the verdict be most clearly wrong, and inconsistent with the proof. *Waul* v. *Kirkman*, 13 S. & M. 599.

When the credibility of the witnesses has been passed upon by the jury, the court will not disturb the finding. *Stovall* v. *F. & M. Bank*, 8 S. & M. 307 ; 6 Cow. 682 ; 8 Ib. 223 ; 1 J. J. Marsh. 223–227.

The testimony of Lucas is, throughout, opposed to his former admissions. He is contradicted on a material point by Acie, and again by E. Hammons, and his credibility was clearly impeached. Crump is contradicted by Davis on the fact of the transfer of the notes, also by the admissions of Lucas while the holder of the paper ; and again is directly contradicted by H. W. Tatum, on the point of his statements to Tatum as to the transfer of the notes to Lucas, in payment of a debt due Lucas.

It is perfectly clear, that the credibility of both these wit-

nesses was questioned by the jury, and their finding will not be disturbed, as it was a point exclusively for their determination.

The agreement made by Lucas while the owner and holder of the choses in action, is binding on those who claim after him.

His admissions, also, under these circumstances, were competent proof of the fact. 2 Phil. Evid., Cow. & Hill's Notes, Pt. 1, p. 663, and cases cited.

The admissions made by Lucas after the transfer of the notes to him, fully establish the agreement for delay made with Morton. See the evidence of E. Pugh Davis, E. Hammons, and E. L. Acie.

The amount of the two notes, originally, was $800. Morton had paid $300, and the consideration for the delay was the agreement on the part of Morton to deliver and give to Lucas the negro Fred, for the balance due; Morton losing the payment of $300.

The effect of the agreement was a conditional sale, and agreement to deliver the negro at an undervalue, if Morton failed to pay at the expiration of the delay.

This agreement could be enforced; Lucas could have recovered the possession of the negro in replevin, on Morton's failure to pay.

Such agreement for the sale was a good consideration for the forbearance. *Turner* v. *Johnson*, 7 Dana, 435; *Brown* v. *Ray*, 10 Ired. 72.

This case is not like, either *Newell & Pierce* v. *Hamer*, 4 How. 692, or *Wadlington* v. *Gary*, 7 S. & M. 522.

The first was but a promise to pay the debt in cotton, and the second, a promise to pay out of a particular fund. Both cases are but a promise to do what the debtor was bound to perform.

In the case at bar, the consideration was the agreement for the delivery of a specific chattel, and that at an undervalue.

Mr. Justice YERGER delivered the opinion of the court.

The plaintiff in error brought an action of assumpsit, in the

Govan v. Binford.

circuit court of Carroll county, against the defendant in error, upon his guaranty of the payment of two notes, given by George K. Morton for the purchase-money of a slave sold to him by Mrs. Pugh, the testatrix.

The defendant insisted, that he had been discharged from liability, in consequence of an extension of time given to Morton without his assent. The jury found for the defendant, and a new trial was refused. This court has recognized the doctrine repeatedly, that if a creditor, without the consent of the surety, enters into a contract with the principal, upon a sufficient consideration to give him an extension of time for a definite period, or enters into any contract with the principal, which in its consequences may have the effect of giving such an extension of time to him, the surety is released from his engagement. Burge on Surety, 203; 6 S. & M. 24; 4 Ib. 165; 6 Ib. 433; 7 Ib. 522.

If we concede to the defendant in error, that the agreement with Lucas, as proved by the witness, is binding upon the plaintiff in error in its full extent, yet it does not, in our opinion, make out a case for the defendant, which in principle can be distinguished from *Wadlington* v. *Gary*, 7 S. & M. 522, in which the court held, that the surety was not released by the agreement.

The witness, Davis, proves, that he heard Lucas say, " he had agreed to wait for the balance due on the first note till some time in June, and for the note last due till some time in November," and that Lucas further said, " Morton promised him and Crump, that if he failed to pay the notes at that time, he would give him a negro man named Fred, for the amount due on the two notes."

In the case of *Wadlington* v. *Gary*, the agreement was to pay out of the proceeds of a certain execution, " and if any thing happened to prevent the payment of the note out of the proceeds of the execution, the debtor promised to transfer to the creditor a note on William Borrow, who was perfectly solvent, in payment of the note sued on."

It was ruled by the court, that this agreement did not release the surety, because the creditor might still have sued the prin-

cipal upon the note. In the case of *Newell* v. *Hamer*, 4 How. 692, it was held, that an agreement by a debtor to pay the debt at a future day, if an extension of time is given to him, and in default of paying on that day to deliver a specific article in payment, amounts only to an agreement to pay the debt at the time stipulated, and is not such a consideration for forbearance as will prevent the creditor from suing. Concurring in this view of the law, we think the court erred in refusing to grant a new trial; and, therefore, reverse the cause, and remand the same.

FISHER, J., having been of counsel in the court below, gave no opinion.